1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11  ARTHUR PETREY, an individual,          No. 2:17-cv-00503-TLN-DB

12                  Plaintiff,

13          v.                             **ORDER GRANTING DEFENDANT'S**
                                           **MOTION TO DISMISS**
14  WELLS FARGO BANK, N.A., a national
    association,
15
                    Defendant.
16

17          This matter is before the court pursuant to Defendant Wells Fargo Bank, N.A.'s

18  ("Defendant") Motion to Dismiss.  (ECF No. 5.)  Plaintiff Arthur Petrey ("Plaintiff") opposes the

19  motion.  (ECF No. 8.)  Defendant has filed a reply.  (ECF No. 11.)  For the reasons discussed

20  below, the Court hereby GRANTS Defendant's Motion to Dismiss.  (ECF No. 5.)

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

                                           1

# I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

The claims in this case arise from Defendant's alleged conduct in connection with Plaintiff's residential mortgage loan modification applications.  On or about September 28, 2006, Plaintiff obtained the property located at 27517 Edwards Avenue, Escalon, California 95320 (the "Property") via transfer to him by MARY ECK.  (ECF No. 1-1 ¶¶ 1, 16.)  Immediately after acquiring the Property, Plaintiff executed a promissory note in favor of World Savings Bank FSB ("World Savings") in the amount of $455,000 ("Note 1").  (ECF No. 1-1 ¶ 17.)  The Deed of Trust was recorded in the San Joaquin County Recorder's Office on September 28, 2006.  (ECF No. 1-1 ¶ 17.)  On June 13, 2007, Plaintiff executed a second promissory note in favor of World Savings in the amount of $30,000 ("Note 2").  (ECF No. 1-1 ¶ 18.)  The corresponding Deed of Trust was recorded in the San Joaquin County Recorder's Office on the same date.  (ECF No. 1-1 ¶ 18.)  Plaintiff alleges the servicing rights of both loans were subsequently transferred to Defendant.  (ECF No. 1-1 ¶ 18.)

According to Plaintiff, his financial difficulties began in 2013, and he started to fall behind on his mortgage payments.  (ECF No. 1-1 ¶ 19.)  Plaintiff asserts he had since attempted to work with Defendant to obtain a loan modification with no success.  (ECF No. 1-1 ¶ 20.)  More specifically, Plaintiff alleges Defendant "stonewalled" Plaintiff's loan modification attempts by repeatedly requesting the same documents and "kicking Plaintiff out of review on multiple occasions" even after said documents were furnished.  (ECF No. 1-1 ¶ 20.)

Plaintiff alleges on or about September 4, 2014, RTS Pacific Inc. ("RTS") filed a Notice of Default ("NOD") at Defendant's behest.[2]  (ECF No. 1-1 ¶ 21.)  Almost two years later, on June 29, 2016, Clear Recon Corporation ("Clear") filed a Notice of Trustee's Sale ("NOS"), also at Defendant's behest.  (ECF No. 1-1 ¶ 22.)  The NOS was recorded on August 18, 2016 at the San Joaquin County Recorder's Office.  (ECF No. 1-1 ¶ 22.)

On or about September 15, 2016, Plaintiff alleges he submitted a completed loan

---

[1]    The following recitation of facts is taken, sometimes verbatim, from Plaintiff's Complaint.  (ECF No. 1-1.)
[2]    Plaintiff has not attached any record of the RTS NOD.  Defendant has proffered a March 18, 2016 NOD filed by Clear Recon Corporation and recorded in the official records of the San Joaquin County Recorder's Office on March 22, 2016.  (*See* Req. for Judicial Notice ("RJN"), ECF No. 6 at 3.)

modification application to Defendant for Notes 1 and 2.[3] (ECF No. 1-1 ¶ 23.) Thereafter, Plaintiff alleges he was "transferred from one Single Point of Contact ("SPOC") to another," with each new SPOC assuring him he was under review and that Defendant would contact him with updates. (ECF No. 1-1 ¶ 24.) Plaintiff contends that every time he contacted Defendant, he was assigned a new SPOC who "would have no idea what was happening with Plaintiff's loan modification," which resulted in Plaintiff having to be transferred to yet another SPOC. (ECF No. 1-1 ¶ 24.)

On or about the end of October 2016, Plaintiff alleges he received a call from Sergio Gonzalez, one of the SPOCs, who informed Plaintiff that a loan modification for Note 2 had been approved. (ECF No. 1-1 ¶ 25.) Plaintiff further alleges that when he inquired as to the loan modification application for Note 1, Gonzalez told him Defendant would not have approved the second loan unless the first loan modification was approved. (ECF No. 1-1 ¶ 25.) According to Plaintiff, Gonzalez subsequently notified Plaintiff that he should expect to receive his loan modification documents shortly. (ECF No. 1-1 ¶ 25.)

Plaintiff claims he never received such documents from Defendant. (ECF No. 1-1 ¶ 26.) Plaintiff alleges that when he followed up with Defendant, a new SPOC informed him "he should be receiving his loan modification shortly." (ECF No. 1-1 ¶ 26.) In spite of this, Plaintiff alleges Defendant moved forward with foreclosure proceedings and a sale of the Property was conducted on January 25, 2017. (ECF No. 1-1 ¶ 27.) Plaintiff maintains that — as of the date of the Complaint — he has still not received a denial letter regarding his loan modification application submitted on September 15, 2016. (ECF No. 1-1 ¶ 28.)

Based on these allegations, Plaintiff states seven causes of action. First, Plaintiff claims Defendant violated California Civil Code Section 2923.6 when it initiated foreclosure proceedings while Plaintiff allegedly had a loan modification application pending review. (ECF No. 1-1 ¶ 37.) Second, Plaintiff alleges a violation of California Civil Code Section 2923.7 based

---

[3] Though the Court declines to take judicial notice of a prior loan modification agreement for Notes 1 and 2 and a second modification agreement for Note 1 (*see* RJN, ECF No. 6), it should nevertheless be clarified that the loan modification at issue in the present dispute constitutes Plaintiff's third loan modification for Note 1 and second loan modification for Note 2.

on Defendant's alleged failure to provide a proper SPOC.  (ECF No. 1-1 ¶¶ 43–47.)  Third, Plaintiff alleges negligence on the part of Defendant because it owed Plaintiff a duty of care in considering his 2016 loan modification application.  (ECF No. 1-1 ¶ 49.)  Fourth, Plaintiff states a promissory estoppel claim based on SPOC Gonzalez's representations that Plaintiff's loan modification applications for Notes 1 and 2 had been approved, which led him to believe that foreclosure proceedings would be postponed.  (ECF No. 1-1 ¶¶ 57–59.)  Fifth, Plaintiff claims a violation of Business and Professions Code Section 17200 *et seq.* based on Defendant's alleged violations of California Civil Codes Sections 2923.6 and 2923.7 and alleged negligence.  (ECF No. 1-1 ¶¶ 64–65.)  Sixth, Plaintiff seeks to set aside the trustee's sale based on allegations that Defendant's unlawful conduct "invalidate[d] the procedures by which it conducted the sale." (ECF No. 1-1 ¶ 74.)  Lastly, Plaintiff seeks to quiet title, claiming an ownership interest in the Property that is adverse to that of Defendant's, whose title Plaintiff alleges was wrongfully obtained in violation of foreclosure statutes.  (ECF No. 1-1 ¶ 77.)

On February 16, 2017, Plaintiff filed his Complaint in the Superior Court of San Joaquin County against Defendant.  (ECF No. 1-1.)  Defendant did not appear in the state court action. (ECF No. 1 at 2.)  Defendant subsequently filed a Notice of Removal to this Court on March 8, 2017.  (ECF No. 1.)  On March 15, 2017, Defendant moved to dismiss all of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 5.)  In response, Plaintiff filed an Opposition to the Motion to Dismiss on April 6, 2017.  (ECF No. 8.)  Defendant subsequently filed a reply on April 13, 2017.  (ECF No. 11.)

## II.  STANDARD OF LAW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation omitted).  "This simplified notice pleading standard relies on

liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege, " 'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant–unlawfully–harmed–me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff has failed to "nudge[] [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id*. at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. This plausibility inquiry is "a context–specific task that requires the reviewing court to draw on its judicial experience and

5

common sense." *Id*. at 679.

If a complaint fails to state a plausible claim, " '[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.' " *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a) (2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

## III.     ANALYSIS

Defendant moves to dismiss all of Plaintiff's causes of action with prejudice. In support of its motion, Defendant: (1) submits thirteen separate documents in its Request for Judicial Notice (ECF No. 6); (2) claims that Plaintiff's Complaint should be dismissed for failure to join his co-borrower as an indispensable party; and (3) argues each cause of action should be dismissed for failure to state a claim. The Court will discuss each of these arguments individually.

### A. Judicial Notice

Defendant requests that the Court take judicial notice of the following thirteen exhibits (ECF No. 6):

> (A)     Certificate of Corporate Existence dated April 21, 2006 issued by the Office of Thrift Supervision ("OTS"), certifying that World Savings Bank, FSB, is a federal savings bank.
>
> (B)     Letter dated November 19, 2007, Office of Thrift Supervision, Department of the Treasury.
>
> (C)     Charter of Wachovia Mortgage, FSB, dated December 31, 2007, reflecting in Section 4 that it is subject to federal Home Owners' Loan Act and the OTS.
>
> (D)     Official Certification of the Comptroller of the Currency stating that effective November 1, 2009, Wachovia Mortgage, FSB converted to

Wells Fargo Bank Southwest, N.A., which then merged with and into Wells Fargo Bank, N.A.

(E)     Printout from the website of the Federal Deposit Insurance Corporation dated December 15, 2010, showing the history of Wachovia Mortgage, FSB.

(F)     Deed of Trust dated September 20, 2006 and recorded in the official records of the San Joaquin County Recorder's Office on September 28, 2006.

(G)     Adjustable Rate Mortgage Note dated September 20, 2006.

(H)     Open End Deed of Trust dated June 7, 2007 and recorded in the official records of the San Joaquin County Recorder's Office on June 13, 2007.

(I)     First Mortgage Modification Agreement dated July 15, 2009.

(J)     Home Affordable Modification Agreement dated January 18, 2012.

(K)     Notice of Default dated March 18, 2016 and recorded in the official records of the San Joaquin County Recorder's Office on March 22, 2016.

(L)     Notice of Trustee's Sale dated June 23, 2016 and recorded in the official records of the San Joaquin County Recorder's Office on June 29, 2016.

(M)     Trustee's Deed Upon Sale dated January 30, 2017 and recorded in the official records of the San Joaquin County Recorder's Office on February 7, 2017.

Plaintiff opposes the request with respect to the two prior loan modification agreements dating back from July 2009 and January 2012 (Exhibits I and J), arguing that the Court may only take notice of "unattached evidence on which the complaint necessarily relies." *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2001). Plaintiff argues that the two documents do not in any way form the basis for Plaintiff's claims and are irrelevant.

Under Federal Rule of Evidence Section 201, a court may take judicial notice of a document when the subject "can be accurately and readily determined from the sources whose accuracy cannot reasonably be questioned." Therefore, "[a] court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute." *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). Matters of public record include records of a

county recorder. *See Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1264 (C.D. Cal. 2010). In addition, the Court may also consider documents "on which the complaint 'necessarily relies' " if they are 1) referred to in the complaint; 2) central to the plaintiff's claim; and 3) authentic. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *see also Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

As to Exhibits A–H and K–M, Plaintiff does not oppose the request, nor does either party dispute the accuracy or authenticity of these documents. Thus, the Court will take notice of said items pursuant to Federal Rule of Evidence Section 201. The Court otherwise finds it unnecessary to consider Exhibits I and J to determine this motion — therefore, Defendant's Request for Judicial Notice with respect to the two prior modification agreements is denied.

B. Indispensable Party

Defendant argues Plaintiff's Complaint (ECF No. 1-1) must be dismissed for failure to join his co-borrower, Mary Eck-Petrey, as an indispensable party. (ECF No. 5 at 9.) According to Defendant, Ms. Eck-Petrey is prevented from "being able to assert or protect her rights in the loan, property or this litigation" as she "would presumably be entitled to a portion or [any] damages or relief" the Court may accord. (ECF No. 5 at 10.) Moreover, Defendant argues that it faces a "substantial risk of multiple litigation" should Ms. Eck-Petrey later "[seek] to alter the outcome of this action or otherwise [seek] inconsistent relief." (ECF No. 5 at 10.)

A court may dismiss a complaint if the pleading fails to name a party indispensable to the pending action. *See* Fed. R. Civ. P. 12(b)(7); Fed. R. Civ. P. 19(a). "A party is indispensable . . . if in its absence, the court cannot accord complete relief among the existing parties . . . or if the absent party claims an interest relating to the subject of the action, and one of two other conditions is met." *Medrano v. Caliber Homes Loans, Inc.*, 2014 U.S. Dist. LEXIS 177576, at *13 (C.D. Cal. Dec. 19, 2014) (citations omitted). "The two conditions by which a party is indispensable under Rule 19(a)(1)(B) are met . . . if 'disposing of the action' without the party claiming an interest 'may . . . as a practical matter impair or impede' that party's 'ability to protect the interest,' or if disposing of the action without the absent party would 'leave an existing party subject to a substantial risk of incurring . . . inconsistent obligations because of the

interest.' " *Id.* at *13–14 (citing Fed. R. Civ. P. 19(a)(1)(B)(i)–(ii)).

"Federal Rule of Civil Procedure 19 provides a three-step process for determining whether the court should dismiss an action for failure to join a purportedly indispensable party." *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999). First, it asks whether the absent party is "necessary (i.e., required to be joined if feasible) under Rule 19(a)." *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012). If so, the court asks whether it is "feasible to order that the absent party be joined." *Id.* If it is not feasible to join the absent party, the court asks whether the case can proceed without it — and if not, dismisses the action. *Id.* The burden of persuading the court that a party must be joined (or the case dismissed) falls to the movant. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

Defendant argues that as the co-borrower on the loan, Mary Eck-Petrey "pledged her interest in the property as security for the loan." (ECF No. 5 at 2.) However, that Ms. Eck-Petrey is a named co-borrower does not necessarily mean she has "claimed an interest" here. *See Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983) ("Subparts (i) and (ii) are contingent, however, upon an initial requirement that the absent party claim a legally protected interest relating to the subject matter of the action"); *Medrano*, 2014 U.S. Dist. LEXIS 177576, at *14 ("Alvarado," the co-borrower, "has claimed no interest in the outcome of this action, and therefore need not be joined, regardless of the risk of inconsistent judgments"). Defendant has offered no evidence indicating that Ms. Eck-Petrey has actively expressed an interest in this action. Even assuming Ms. Eck-Petrey has claimed such an interest and is deemed a "necessary party" under Rule 19, Defendant does not make any arguments as to 1) whether joinder of the absent party is feasible or 2) whether the case can proceed without Ms. Eck-Petrey if joining her is not feasible. Because Defendant has failed to meet its burden, its motion to dismiss on this ground is denied.

C. Motion to Dismiss

Defendant argues none of Plaintiff's claims are pled with adequacy or particularity and therefore must be dismissed. The Court will address each claim in turn.

//

     *i.  Claims One and Two: Homeowner Bill of Rights ("HBOR") Violations*

    Defendant argues Plaintiff is not entitled to protections under California Civil Code Section 2923.6 because he was not seeking a first lien loan modification, but rather a third for Note 1 and a second for Note 2.  (ECF No. 5 at 10–11.)  Defendant also points out that Plaintiff has not alleged he ever *requested* a single point of contact, as required by Section 2923.7(a).  (ECF No. 5 at 11.)  Finally, Defendant argues any alleged violations under Sections 2923.6 and 2923.7 have not been shown to be material.  (ECF No. 5 at 11.)

    As a threshold matter, the Court evaluates the applicability of Sections 2923.6 and 2923.7 to the Property.  In 2016, the year in which the alleged violations occurred, California's Homeowner Bill of Rights provided in pertinent part:

> (a) Unless otherwise provided, paragraph (5) of subdivision (a) of Section 2924, and Sections 2923.5, 2923.55, *2923.6*, *2923.7*, 2924.9, 2924.10, 2924.11, and 2924.18 shall apply only to first lien mortgages or deeds of trust that are secured by *owner-occupied residential real property* containing no more than four dwelling units.  For these purposes, "owner-occupied" means that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes.

Cal. Civ. Code § 2924.15(a) (emphasis added) (repealed 2018).[4]

    Here, Plaintiff states "at all times relevant to this action, [he] has owned and resided" at the Property in question.  (ECF No. 1-1 ¶ 1.)  However, he has not alleged the Property was "owner-occupied" as defined by the statute, which specifically requires that the property be "the *principal residence* of the borrower."  Cal. Civ. Code § 2924.15(a) (emphasis added) (repealed 2018).  Therefore, the Court finds Plaintiff has not adequately pled a violation of either section 2923.6 or 2923.7 under the HBOR and declines to address Defendant's arguments at this time.  The motion to dismiss Plaintiff's First and Second Causes of Action is granted.

    *ii.  Claim Three: Negligence*

    Defendant argues it did not owe a duty of care in considering Plaintiff's 2016 loan

---

[4]  The 2016 version of Section 2924.15 remained in effect only until January 1, 2018, after which it was repealed and replaced with the current version.  The 2018 iteration only limits the applicability of Sections 2923.5, 2923.7, and 2924.11 to those properties qualifying as "owner-occupied."  Cal. Civ. Code § 2924.15(a) (originally enacted as 2012 Cal. Stats. ch. 87).

modification application. (ECF No. 5 at 12.) In support, Defendant cites *Nymark v. Heart Fed. Savings Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991), which states "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Defendant maintains that because there was privity between the two parties and because the complaint fails to allege any action on the part of Defendant which exceeded that of a traditional lender, no duty of care existed. (ECF No. 5 at 15–16.) Even if it did owe a duty of care, Defendant argues Plaintiff has failed to demonstrate causation or allege damages. (ECF No. 5 at 16–17.)

Plaintiff alleges Defendant owed Plaintiff a duty of care in reviewing Plaintiff's loan modification application before commencing non-judicial foreclosure proceedings. (ECF No. 1-1 ¶ 49.) According to Plaintiff, Defendant's actions and omissions constituted a breach of this duty, which directly and proximately caused Plaintiff's damages. (ECF No. 1-1 ¶¶ 50, 55.)

To prevail on a claim for negligence, a plaintiff must demonstrate "(1) the existence of a duty to exercise due care; (2) breach of that duty; (3) causation; and (4) damages." *See Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001). Despite the general rule that a financial institution does not typically owe a duty of care to a borrower when its actions fall within the scope of a traditional lender, "*Nymark* does not support the sweeping conclusion that a lender never owes a duty of care to a borrower." *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 945 (2014) (internal quotation marks omitted). Instead, whether a duty of care exists is a question of law that must be answered on a case-by-case basis. *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 62 (2013).

a. Duty of Care

To determine whether a duty of care exists, courts balance the six *Biakanja* factors:

> [1] the extent to which the transaction was intended to affect plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

11

*See Nymark*, 231 Cal. App. 3d at 1098 (citing *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958)).

Defendant contends that the facts alleged in the complaint serve to distinguish the instant case from those which have found a duty of care in the loan servicing context. (ECF No. 5 at 6–7.) Following the reasoning in *Alvarez*, the Court finds — as it has on prior occasions — that a balance of the *Biakanja* factors is necessary for the determination of whether a duty of care exists. *See, e.g.*, *Way v. JP Morgan Chase Bank, N.A.*, No. 2:16-cv-02244-TLN-KJN, 2018 U.S. Dist. LEXIS 77622, at *21–22 (E.D. Cal. May 7, 2018); *Beltz v. Wells Fargo Home Mortg.*, No. 2:15-cv-01731-TLN-CKD, 2017 U.S. Dist. LEXIS 29140, at *18 (E.D. Cal. Feb. 27, 2017); *Meixner v. Wells Fargo Bank, N.A.*, 101 F. Supp. 3d 938, 952 (2015). Because Defendant does not offer any analysis of the *Biakanja* factors themselves in its motion to dismiss or reply brief, the Court reviews Plaintiff's allegations and the complaint on its face. After weighing the six *Biakanja* factors below, the Court concludes that Defendant likely owed Plaintiff a duty of reasonable care in considering Plaintiff's loan modification.

In regards to the first factor, the extent to which the transaction was intended to affect the plaintiff, Plaintiff alleges he tried to work with Wells Fargo in order to "prevent foreclosure and seek loss mitigation assistance." (ECF No. 1-1 ¶ 52.) A loan modification would have affected Plaintiff's ability to make his mortgage payments, and therefore this factor weighs in favor of Plaintiff and finding a duty of care.

As to the second factor — the foreseeability of harm to the plaintiff — Plaintiff alleges Defendant "stonewalled" Plaintiff in his efforts to secure a loan modification and failed to assign "an effective SPOC and provide accurate, consistent, truthful, and material information" to Plaintiff. (ECF No. 1-1 ¶ 50.) Based on these allegations, the Court finds Defendant could have foreseen Plaintiff's inability to receive a loan modification and the resultant harm if Plaintiff did not receive a loan modification. As discussed in *Beltz v. Wells Fargo Home Mortg.*, such alleged "unreasonable review" and/or "mishandling" of Plaintiff's loan modification documents weighs against Defendant. *See Beltz v. Wells Fargo Home Mortg.*, No. 2:15-cv-01731-TLN-CKD, 2017 U.S. Dist. LEXIS 29140, at *20 (E.D. Cal. Feb. 27, 2017). This factor therefore also weighs in

favor of Plaintiff.

As to the third factor — the degree of certainty that the plaintiff sustained an injury — Plaintiff points to the foreclosure, unspecified losses, and "general and special" damages. (ECF No. 1-1 ¶¶ 53, 55.) Though the Court finds Plaintiff's general allegations of said losses and damages to be vague, the foreclosure of Plaintiff's home is itself significant and supports a finding that Plaintiff did suffer injury. While plaintiffs in the past have had difficulty satisfying this factor where only the risk or threat of losing a home was alleged (*see Beltz v. Wells Fargo Home Mortg.*, No. 2:15-cv-01731-TLN-CKD, 2017 U.S. Dist. LEXIS 29140, at *21), foreclosure and a subsequent sale of the Property has already been conducted in the instant case. Therefore, "the degree of certainty is clear as the loss of a home is the eventual end result in foreclosure cases." *Mountjoy v. Bank of Am. N.A.*, No. 2:15-cv-002204-TLN-DB, 2018 U.S. Dist. LEXIS 3216, at *30 (E.D. Cal. Jan. 8, 2018). The third factor thus weighs in favor of Plaintiff.

With regard to the fourth factor, the closeness of the connection between the defendant's conduct and the injury suffered, Plaintiff alleges Defendant made multiple requests for the same documents even after Plaintiff provided them and that it passed Plaintiff around from one SPOC to another. (ECF No. 1-1 ¶¶ 20, 24.) Plaintiff contends that Defendant, in its capacity as Plaintiff's lender and/or servicer, engaged in such tactics with intentions to surreptitiously foreclose on the Property. (ECF No. 1-1 ¶¶ 13, 49.) These allegations support a finding of a close connection between Defendant's conduct and Plaintiff's inability to obtain a loan modification. The fourth factor therefore weighs in favor of Plaintiff.

As to the fifth factor — moral blame attached to the defendant's conduct — whether moral blame should be applied to Defendant's conduct is unclear. Nevertheless, courts have pointed out the unequal bargaining power between a borrower and a bank, with the borrower's "ability to protect his own interests in the loan modification process [being] practically nil…" *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 949 (2014) (internal quotation marks and citations omitted). Moreover, " 'conflicts of interest that exist in modern loan servicing' create a moral imperative" on the part of such banks to exercise reasonable care in their dealings with borrowers. *Beltz v. Wells Fargo Home Mortg.*, No. 2:15-cv-01731-TLN-

CKD, 2017 U.S. Dist. LEXIS 29140, at \*22 (E.D. Cal. Feb. 27, 2017) (quoting *Alvarez*, 228 Cal. App. 4th at 949).  Therefore, this factor narrowly weighs in favor of Plaintiff.

Finally, the policy of preventing future harm weighs in favor of Plaintiff because the passing of California's Homeowner Bill of Rights "demonstrates a rising trend to require lenders to deal reasonably with borrowers in default to try to effectuate a workable loan modification." *Alvarez*, 228 Cal. App. 4th at 950; *see also Meixner*, 101 F. Supp. 3d at 955.

Though Defendant made several arguments as to why the Court should not apply the *Biakanja* framework, Defendant has nonetheless failed to provide an analysis of any of the individual factors with respect to Plaintiff's allegations.  Therefore, with all six *Biakanja* factors weighing in favor of Plaintiff, the Court finds that a duty of care likely existed with regard to Defendant's handling of Plaintiff's loan modification applications.

        b.  Causation

Defendant argues Plaintiff fails to demonstrate a link between Defendant's conduct and the foreclosure.  (ECF No. 5 at 15–16.)  Instead, Defendant maintains that the foreclosure is attributable to Plaintiff's default rather than Defendant's handling of the loan modification request.  (ECF No. 5 at 16.)  According to Plaintiff, Defendant's failure to assign an effective SPOC and "provide accurate, consistent, truthful and material information" was instrumental in causing the foreclosure.  (ECF No. 1-1 ¶¶ 50–51.)

To satisfy the element of causation, a plaintiff must demonstrate "proximate [or legal] cause between the breach and . . . the injury." *Mountjoy v. Bank of Am. N.A.*, No. 2:15-cv-002204-TLN-DB, 2018 U.S. Dist. LEXIS 3216, at \*28 (E.D. Cal. Jan. 8, 2018).

As previously discussed, the alleged loss of Plaintiff's home is not to be taken lightly. Nevertheless, Plaintiff has not stated facts showing that such a loss was caused by Defendant's negligence.  Plaintiff instead points to actions which all allegedly took place after Plaintiff defaulted.  It is true that "failure to provide a single point of contact could be an ongoing violation that potentially predated — and potentially contributed to — [Plaintiff's] default." *Rahbarian v. JP Morgan Chase*, No. 2:14-cv-01488-JAM-KJN, 2014 U.S. Dist. LEXIS 158719, at \*25 (E.D. Cal. 2014) (citations omitted).  However, Plaintiff has not alleged any actions on the part of

14

Defendant which occurred before the default and could have contributed to such. Plaintiff's claim thus fails to establish causation.

c. Damages

Even if the foreclosure could be traced to any alleged negligence, Defendant argues Plaintiff has not pled facts showing damages. (ECF No. 5 at 15–16.) Plaintiff alleges he suffered "subsequent losses" and "general and special damages" as a "direct and proximate result of the negligence and carelessness of Defendant." (ECF No. 1-1 ¶¶ 53, 55.) In his opposition, Plaintiff further maintains Defendant's "botched SPOC assignment" and alleged dual-tracking practice "deprived [him] of the opportunity to obtain the modification, which could have saved [his] home." (ECF No. 8 at 15.)

"[M]ishandling of modification documents may deprive a homeowner of the possibility of obtaining the relief requested, even though there was no guarantee the modification would have been approved if properly handled." *Swasey v. Seterus, Inc.*, No. 2:16-cv-01633-TLN-FEB, 2018 U.S. Dist. LEXIS 100126, at *24 (E.D. Cal. June 14, 2018) (citations omitted). However, the Court notes that Plaintiff's argument(s) in his opposition cannot cure any defects of the Complaint. *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[W]hen the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), review is limited to the complaint.") (internal quotation marks and citations omitted). In a case involving foreclosure, "[t]he homeowner must allege damages with sufficient specificity." *Swasey v. Seterus, Inc.*, No. 2:16-cv-01633-TLN-FEB, 2018 U.S. Dist. LEXIS 100126, at *24 (E.D. Cal. June 14, 2018).

Plaintiff alleges Defendant caused him "to refrain from seeking measures to counteract foreclosure," resulting in "significant harm." (ECF No. 1-1 ¶¶ 51, 53.) Beyond that, however, there is a considerable lack of specificity in Plaintiff's allegations as to the damages he suffered. Plaintiff does not detail what specific measures he would have sought, nor does he explain how they would have helped mitigate damages. Without more, this Court finds that Plaintiff has failed to satisfy the element of damages.

While the Court finds a duty of care likely existed, Plaintiff has not adequately stated a claim for negligence. For the reasons stated, Defendant's motion to dismiss Plaintiff's Third Cause of Action is granted.

### iii. Claim Four: Promissory Estoppel

Defendant argues that Plaintiff's claim for promissory estoppel must fail for lack of "a clear and unambiguous promise." (ECF No. 5 at 17.) Rather, Defendant argues that regardless of whether the SPOC's statement about the loan modification for Note 2 led Plaintiff to believe that the application for Note 1 was approved, such a statement did not constitute a promise. (ECF No. 5 at 17.) Because both the SPOC's statement and the complaint lack any information as to specific terms of the alleged modification, Defendant maintains the statement was not "definite enough that the court could determine the scope of the duty or what damages Plaintiff might be entitled to." (ECF No. 5 at 17.) Secondly, Defendant contends that even if there was a promise, it would be unenforceable under California's statute of frauds in the absence of any written agreement. (ECF No. 5 at 17–18.)

Plaintiff alleges Defendant's representations, through the SPOC and otherwise, amounted to promises which he reasonably and justifiably believed to mean that both loan modification applications for the two promissory notes had been approved and that foreclosure proceedings would be halted. (ECF No. 1-1 ¶¶ 57–58.)

The promissory estoppel doctrine provides that "a promisor is bound when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement." *Youngman v. Nev. Irrigation Dist.*, 70 Cal. 2d 240, 249 (1969). "Under California law, the elements of promissory estoppel are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 792 (9th Cir. 2012) (citing *U.S. Ecology, Inc. v. State*, 129 Cal. App. 4th 887, 28 Cal. Rptr. 3d 894 (2005)). Because Defendant does not raise any arguments as to the third and fourth elements, the Court will only discuss whether Plaintiff has sufficiently alleged a clear and unambiguous

promise on which he relied. As these issues are dispositive, the Court also deems it unnecessary to examine Defendant's statute of frauds defense at this time.

### a.  Plaintiff Does Not Allege a Clear and Unambiguous Promise

"To be enforceable, a promise need only be definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." *Meixner v. Wells Fargo Bank, N.A.*, 101 F. Supp. 3d 938, 949 (E.D. Cal. 2015) (citations and internal quotation marks omitted).

Plaintiff claims the SPOC employed by Defendant informed Plaintiff that a loan modification for Note 2 was approved and that this would not have been the case had the application for Note 1 been denied. (ECF No. 1-1 ¶ 58.) This statement is better characterized as an oblique and unclear reassurance rather than a definite promise that the loans would be modified. As haphazard as the statement may have been, Plaintiff fails to allege the promise of any concrete terms that would allow the Court to determine the scope of Defendant's duty or the extent of damages. Without such, the Court finds no clear and unambiguous promise, which is fatal to a promissory estoppel claim.

### b.  Plaintiff Fails to Plead Facts Demonstrating Reliance

"Detrimental reliance requires a showing that plaintiff has undertaken a sufficient change of position in reliance on defendant's promise." *Sheng v. Select Portfolio Servicing, Inc.*, No. 2:15-cv-0255-JAM-KJN, 2015 U.S. Dist. LEXIS 97077, at *10 (E.D. Cal. July 24, 2015) (citations and internal quotation marks omitted).

Plaintiff alleges Defendant intended for Plaintiff to rely on the SPOC's representations regarding the loan modifications for Notes 1 and 2, fall further into default, and ultimately be subject to foreclosure. (ECF No. 1-1 ¶ 59.) Even if Plaintiff adequately pled a clear and unambiguous promise, however, he has not alleged sufficient facts to demonstrate detrimental reliance. To support his claim for promissory estoppel, Plaintiff states he "relied on [Defendant's] promises to his financial detriment by passing up other opportunities to avoid foreclosure." (ECF No. 1-1 ¶ 61.) Besides general allegations such as this one, Plaintiff has not indicated what alternative options, if any, existed. Though Plaintiff details having to "expend

monies in order to hire experts and counsel in order to attempt to reverse the effects of a wrongful foreclosure sale," Plaintiff never specifies any actions he would or could have taken in order to stall the foreclosure in the first place.  (ECF No. 1-1 ¶ 61.)  Therefore, Plaintiff has not adequately demonstrated "a sufficient change of position in reliance" on Defendant's statements, irrespective of whether or not any of the representations made amounted to a promise.

As discussed above, Plaintiff fails to meet basic requirements of a promissory estoppel claim.  Thus, Defendant's motion to dismiss Plaintiff's Fourth Cause of Action is granted.

       *iv.*      *Claim Five: Violation of California Business and Professions Code § 17200* et seq.

Defendant moves to dismiss Plaintiff's Fifth Cause of Action for violation of California Business and Professions Code Section 17200 *et seq.* (the "UCL") on the grounds that Plaintiff failed to demonstrate "an actual loss *caused by* [Defendant's] allegedly unlawful conduct" and therefore lacks standing to sue under the UCL.  (ECF No. 5 at 19.)  The Court interprets Defendant's argument as a challenge to both the issues of injury and causation and will therefore discuss each accordingly.

"To bring a UCL claim, a plaintiff must show either an (1) unlawful, unfair, or fraudulent business act or practice, or (2) unfair, deceptive, untrue, or misleading advertising."  *Lippitt v. Raymond James Financial Services, Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003); *see also* Cal. Bus. & Prof. Code § 17200.  An act therefore violates the UCL if it is "unlawful," "unfair," or "fraudulent."  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010).  An action seeking redress under the UCL for an unlawful business practice "borrows violations of other laws and treats these violations . . . as unlawful practices, independently actionable under section 17200 *et seq*. and subject to the district remedies provided thereunder."  *Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383 (1992) (internal quotation marks and citations omitted).  However, in order to state a claim under the UCL, a plaintiff must establish standing by demonstrating "injury in fact" and the loss of "money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204; *see also Rubio*, 613 F.3d at 1203–04; *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 227 (2006).  The standing

requirement has been interpreted to include a causation element, as the plaintiff must "show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (emphasis in original).

As to the first prong of the standing requirement — injury in fact — courts have found that the "imminent loss of a home to foreclosure constitutes an injury." *Rahbarian v. JP Morgan Chase*, No. 2:14-cv-01488-JAM-KJN, 2014 U.S. Dist. LEXIS 158719, at *22 (E.D. Cal. 2014). Plaintiff has sufficiently alleged "the possible loss of [the Property]" in addition to losing "the opportunity to pursue other foreclosure prevention options, the loss of the opportunity to obtain a permanent modification, the back dues and interest that has accrued to date that would not have accrued but for [Defendant's] action, the cost and expense of the instant pending litigation, and other actual and consequential damages . . . ." (ECF No. 1-1 ¶ 69.)

That said, the Court agrees with Defendant's argument as to lack of cause. Plaintiff has not demonstrated this loss was the result of Defendant's alleged unlawful conduct or unfair business practices. It is undisputed that Plaintiff defaulted on his mortgage payments, prompting the foreclosure process. Moreover, the Court has already determined that Plaintiff's HBOR, negligence, and promissory estoppel claims cannot succeed as currently stated. Even assuming alleged unlawful conduct did occur, however, Plaintiff's default pre-dated such actions and served to trigger foreclosure proceedings. Because Plaintiff has failed to establish a causal link between his injury and Defendant's conduct, he has not properly demonstrated standing under the UCL. Therefore, the motion to dismiss Plaintiff's Fifth Cause of Action is granted.

> *v.*    *Claim Six: Setting Aside Trustee's Sale*

Defendant argues no prior agreement or duty existed requiring it to halt foreclosure proceedings pending review of Plaintiff's loan modification application. (ECF No. 5 at 19–20.) Yet, Plaintiff seeks to set aside trustee's sale and invalidate the foreclosure based on allegations that the sale was conducted "unfairly, unlawfully and mistakenly." (ECF No. 1-1 ¶ 71.) Specifically, Plaintiff alleges the trustee's sale was conducted "without notice to Plaintiff, despite ongoing communications, representations and agreements that the Trustee's Sale would not be

conducted until a decision on the loan modification application was made by [Defendant]." (ECF No. 1-1 ¶ 71.) Plaintiff further claims Defendant "had a duty to send Plaintiff a written denial and then to subsequently wait at least thirty (30) days after the denial" before foreclosing on the Property. (ECF No. 1-1 ¶ 73.)

"A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender." *Moeller v. Lien*, 25 Cal. App. 4th 822, 831 (1994). "As a general rule, a trustee's sale is complete upon acceptances of the final bid." *Nguyen v. Calhoun*, 105 Cal. App. 4th 428, 440–41 (2003). "If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly." *Moeller*, 25 Cal. App. 4th at 831. To obtain an equitable set aside of a trustee's sale, a plaintiff must allege that: (1) defendant caused an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust; (2) plaintiff suffered prejudice or harm; and (3) plaintiff has tendered the amount of the secured indebtedness or was excused from tendering. *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 104 (2011); *see also Nugent v. Fed. Home Loan Corp.*, No. 2:12-cv-0091-TLN-EFB, 2014 U.S. Dist. LEXIS 141029, at *21 (E.D. Cal. Sept. 30, 2014). "The first element may be satisfied by allegations that (1) the trustee or beneficiary failed to comply with the statutory procedural requirements for the notice or conduct of the sale; (2) the trustee did not have the power to foreclose; (3) the trustor was not in default, no breach had occurred, or the lender waived the breach; or (4) the deed of trust was void." *West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 800 (2013).

Plaintiff complains Defendant failed to follow statutory procedural requirements regarding notice and conduct of the sale. However, even assuming the foreclosure was unlawful and caused harm to Plaintiff, there is no indication that he has fully paid off the mortgage amount or has otherwise been excused from doing so. "An allegation of tender of the indebtedness is necessary when the person seeking to set aside the foreclosure sale asserts the sale is voidable due to irregularities in the sale notice or procedure." *West*, 214 Cal. App. 4th at 801 (citing *Lona*, 202 Cal. App. 4th at 112). Without such, Plaintiff's claim to set aside trustee's sale fails. Defendant's

1    motion to dismiss Plaintiff's Sixth Cause of Action is granted.

2              *vi.*      *Claim Seven: Quiet Title*

3        Defendant argues that because Plaintiff has yet to tender the outstanding debt tied to the

4    Property, Plaintiff's quiet title claim must also fail. (ECF No. 5 at 20–21.) Plaintiff claims

5    Defendant has "no right, title, estate, lien or interest" in said property. (ECF No. 1-1 ¶ 78.)

6        "A borrower may not . . . quiet title against a secured lender without first paying the

7    outstanding debt on which the mortgage or deed of trust is based. *Lueras v. BAC Home Loans*

8    *Servicing, LP*, 221 Cal. App. 4th 49, 86 (2013); *see also Gosal v. Wells Fargo Bank, N.A.*, No.

9    2:18-cv-00908 JAM AC (PS), U.S. Dist. LEXIS 100226, at *18–19 (E.D. Cal. June 14, 2018)

10   (noting that "the cloud on title remains until the debt is paid") (findings and recommendations),

11   *adopted*, No. 2:18-cv-00908 JAM AC (PS) (E.D. Cal. Aug. 15, 2018). Here, Defendant has a

12   right to title in the property as the lender and current beneficiary. The public record reflects this

13   as both of the original Deeds of Trust furnished by Plaintiff recognize "WORLD SAVINGS

14   BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES," as the lender and beneficiary. (ECF

15   No. 1-1 at 18–19, 36.) Plaintiff himself has alleged Defendant ultimately obtained the servicing

16   rights of both loans. (ECF No. 1-1 ¶ 18.) Since Plaintiff has not alleged tender of the outstanding

17   debt, quiet title against Defendant is not possible. Thus, for the same reason Plaintiff cannot

18   succeed on his claim to set aside trustee's sale, the Court finds that Plaintiff also fails to state a

19   claim to quiet title. Defendant's motion to dismiss Plaintiff's Seventh Cause of Action is granted.

20   **IV.**     **CONCLUSION**

21        For the foregoing reasons, the Court hereby GRANTS Defendant's Motion to Dismiss

22   Claims 1–7 (ECF No. 5) without prejudice. Plaintiff shall be granted thirty (30) days from the

23   date of this Order to file a First Amended Complaint within the confines specified in this Order.

24        IT IS SO ORDERED.

25   Dated: October 15, 2018

26

27                           Troy L. Nunley

28                           United States District Judge